239 So.2d 568

**LaWanda SHARBUTT**

v.

**Norman R. SHARBUTT.**

**3 Div. 22.**

Court of Civil Appeals of Alabama.

Sept. 23, 1970.

Cameron & Cameron, Montgomery, for appellant.

No appearance for appellee.

BRADLEY, Judge.

Norman and LaWanda Sharbutt were married in February 1959. LaWanda at the time of the marriage was 14 years old and Norman was 28 years old.

They lived together until July 6, 1968, at which time they separated. During the time they were married there were four children born to LaWanda and Norman Sharbutt—three boys and a girl.

On July 24, 1968 a divorce based on cruelty was granted to LaWanda, and, as agreed, custody of the four children was granted to LaWanda, and Norman was required to pay $200 per month for the support and maintenance of said children.

At the time of the divorce, Norman was in the U. S. Air Force, and shortly thereafter was transferred to the Phillippine Islands for duty.

Norman returned to the U. S. in October 1968 for a fifteen day leave and, as a result of this visit, a girl child was born to LaWanda and Norman out of wedlock.

The next time Norman was in the States was January 20, 1970, when he returned due to the urging of LaWanda's relatives.

Norman filed a petition in the Circuit Court of Montgomery County, Family Relations Division, on January 27, 1970, seeking custody of the five children born to him and LaWanda, on the ground that she was no longer a fit person to care for the children.

In his petition Norman alleged that LaWanda had deserted the children on several occasions, and that he found the three boys in a home operated by the Court and the two girls in the care of a sister of LaWanda who lived in Shelby County, Alabama.

Norman also alleged that LaWanda had remarried and was presently living in the State of Pennsylvania.

Norman's petition was heard by the Court on March 2, 1970, at which time testimony was taken from Norman, LaWanda, LaWanda's new husband, a representative of the County Welfare Department, and a representative from the Youth Aid Division of the Montgomery Police Department.

After the hearing and on March 6, 1970 the Court entered a decree granting custody of the five children to Norman, permitting the two young females to reside, for the time being, with their aunt, Mrs. Leon Cost, in Shelby County, Alabama, and the three boys to reside with their father in Montgomery or with his mother who lives in Sylacauga, Alabama.

The Court also discontinued the $200 per month that had been previously awarded for the support and maintenance of the children, and then directed that Mrs. Cost be awarded $50 a month for the care of the two girls.

LaWanda was granted reasonable visitation rights with the children.

From this decree of the trial court LaWanda has appealed to this court for review, and has assigned six grounds of error, five of which question the custody arrangements and one which contends that the court failed to consider her testimony given at the trial.

The evidence taken by the court tended to show that LaWanda had left her children on three different occasions.

The first time that appellant left her children was in October 1969 when she went to Pennsylvania to work. She was gone three weeks and left the children in the care of a neighbor.

A sister of appellant said she found the children to be in poor condition and took them to her home in Shelby County, Alabama.

The second time appellant left her children was in November 1969 when she went to Florida and worked for about two and one-half weeks. On this trip appellant did take the oldest female child with her, but left the six months old female child with one friend and the three boys with another friend.

The friend who had the youngest girl turned her in to the Welfare Department, and neighbors complained to the Welfare authorities about the lack of care of the boys, and they were picked up and placed in the Shelter home.

· In January 1970 the appellant again left her children in the care of another person and departed for Florida to "think things out." This absence lasted only about four days.

On this occasion the police were summoned by a neighbor to do something with the children who were wandering in the neighborhood. The policeman who answered the call, at 11:00 p.m., found three of the children in the house alone, except for a neighbor's 15 year old son who was looking after them until the police could respond to the call, and the policeman stated that he found the house dirty and uneaten food lying around in the house. The other two children were found the next day at a neighbor's house.

The Welfare Agency, on each of the absences of the appellant, took charge of the children and cared for them until appellant returned to Montgomery and took the children back.

Appellant testified that each time she left the children, she first made arrangements for someone to look after them, and also left an address and telephone number where she could be reached if she were needed. But, it appears from the evidence, that these people were not too reliable, for the Welfare Agency would, each time appellant was absent from home, end up with the care of the children.

LaWanda stated that at one time she worked at a truck stop for about five months, and was away from home ten to fourteen hours a day. During her absence she left the children in the care of a 17 year old Negro girl.

Appellant also testified that a man, Dick Stenson, lived with her and her children in her house for two weeks in August 1969. They were not married.

On January 16, 1970 appellant married Merle Woolfe in Montgomery, Alabama, and then went with him to Pennsylvania where they are now living.

Mr. Woolfe testified that he would like to have the children live with them in Pennsylvania, and that he was financially able to care for them. He further testified that he and the appellant lived in a comfortable home with sufficient space for the children.

Assignments of error one, two, three, four and five question that portion of the court's decree wherein the custody of the five children is placed in the appellee-father, and wherein the two young girls are permitted to reside with their aunt, Mrs. Cost, for the time being, and the boys are permitted to reside, at times, with their father's mother.

Assignment of error number six raises the point that the trial court failed to consider appellant's testimony given at the hearing on the petition for modification of that part of the original decree relating to custody.

■ Appellant submits, in assignments one, two, three, four and five, that appellee failed to prove that she was an unfit mother, although the evidence showed that appellant had on three separate occasions left her children in circumstances where they were not being properly cared for, and lived with a man to whom she was not married in her house with her children for two weeks.

In support of her contention appellant has cited us to several cases which we do not think, after carefully reading them, would be controlling authority for her theory of the case.

This court, in the case of Randolph v. Randolph, 45 Ala.App. 326, 229 So.2d 923 (1970), was faced with a factual situation

very similar to the one we now have before us, wherein a divorce had been granted to the wife and she had received the custody of the five children. Later the father petitioned the court seeking a change in custody from the mother to him. There was considerable testimony presented to the court concerning the fitness of each parent to have custody of the five children ranging in age from seven to seventeen. The evidence was conflicting on the question of fitness for custody, but the court ordered custody placed in the father.

In reviewing the wife's appeal, this court said:

"There have been obvious material changes of conditions since the granting of the original decree, and these changes are sufficient for the trial court to determine a change in custody to be to the best interest of the children. Sparks v. Sparks, 249 Ala. 352, 31 So.2d 313; White v. White, 247 Ala. 405, 24 So.2d 763; Satterfield v. Satterfield, 250 Ala. 245, 34 So.2d 4.

"Although there is conflict in the evidence, the court below granted the original divorce. The judge heard the testimony and observed the witnesses for three days, and considered the matter for more than a month before entering the decree from which this appeal is taken. We know the difficulty of decisions affecting the lives of so many people, especially the life and welfare of five little children. We are certain the court reached a decision based upon its consideration of the best interest of the children. We cannot say that the decree is plainly and palpably wrong, and it must be given the weight of a jury verdict. Blankenship v. Blankenship, 266 Ala. 182, 94 So.2d 743; Hale v. Hale, 259 Ala. 666, 68 So.2d 63.

"The matter of custody of minor children is never closed and the court below

will continue to be the forum where relief is available. If circumstances should require further modification, petition may be filed. * * *"

In the case now before us we feel, as we did in the cited case, that the trial judge who heard testimony from the mother-appellant, father-appellee, husband of appellant and others, had the best interests of the children in mind when he placed the custody of them in the father-appellee, and permitted the two little girls to continue to reside with their aunt, and the three boys to reside with the father's mother until he could make arrangements for them to live with him.

We cannot say in these circumstances that the trial court was "plainly and palpably wrong" in its decree in this regard.

Therefore, we say that the trial court did not commit error in this aspect of its decree.

We would point out, however, as we said in *Randolph* supra, that, "If circumstances should require further modification, petition may be filed" with the Circuit Court of Montgomery County.

In her assignment of error six appellant says the trial court erred in not considering her testimony, and for the contention that her testimony was not considered, refers us to that portion of the decree which provides:

"* * * there being present the Complainant and Respondent and their solicitors of record, George Cameron and Alfred W. Goldthwaite, solicitors for the Complainant and Respondent, respectively, and the Court hearing sworn testimony of Mrs. Mary Leigh Williams, Mr. Pat Burton, and Mr. Merle Wolfe, and the Court having duly considered the same, it is hereby ORDERED, ADJUDGED AND DECREED by the Court: * * *"

Appellant says that she has been denied due process of law as a result of the trial court's failure to consider her testimony and cites us to the case of Danford v. Dupree, 272 Ala. 517, 132 So.2d 734.

In *Danford,* the Supreme Court was faced with a habeas corpus petition filed by a mother seeking custody of an illegitimate child whom she had given to the defendant. The trial court informed the attorney for the mother that he had to convince the court that the defendant was totally unfit to have custody of the child. He made it plain to the attorney that he was unhappy with the testimony of the appellant and in effect prejudged the case before all of the evidence was in, discouraging further testimony by appellant.

We do not have that situation in this case. Here, the trial court heard the testimony of the mother, the father, the new husband of the appellant-mother, and witnesses from the Welfare Agency and Police Department, and rather than discouraging further testimony, encouraged a full hearing of the issues presented to it.

The wording of the trial court's decree in that aspect set out above is not sufficiently clear to show that the testimony of appellant was specifically considered, nor is it clear that her testimony was not considered.

We think the wording of the decree could have been more specific. However, we do not believe that the trial court, by using the cited language, refused or failed to consider the testimony of the appellant and all of the other witnesses testifying before him in this case.

Furthermore, we do not believe that appellant has been denied "due process of law" as defined in *Danford,* supra, nor do we believe that the trial court should be reversed for using the particular language it used in its decree.

There being no error in the record below, this case is affirmed.

Affirmed.

THAGARD, P. J., not sitting.